**KUZYK LAW, LLP**
Michael D. Braun (SBN 167416)
*mdb@kuzykclassactions.com*
1999 Avenue of the Stars, Ste. 1100
Los Angeles, California 90067
Telephone:    (213) 401-4100
Facsimile:    (213) 401-0311

**KAPLAN FOX & KILSHEIMER LLP**
Laurence D. King (SBN 206423)
*lking@kaplanfox.com*
Matthew B. George (SBN 239322)
*mgeorge@kaplanfox.com*
Blair E. Reed (SBN 316791)
*breed@kaplanfox.com*
1999 Harrison Street, Suite 1560
Oakland, CA 94612
Telephone:    (415) 772-4700
Facsimile:    (415) 772-4707

**KAPLAN FOX & KILSHEIMER LLP**
Joel B. Strauss (to be admitted *pro hac vice*)
*jstrauss@kaplanfox.com*
850 Third Avenue
New York, NY 10022
Telephone:    (212) 687-1980
Facsimile:    (212) 687-7714

*Counsel for Plaintiff and the Proposed Class*

## UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| ROBERT L. WARING, on behalf of himself and all others similarly situated, | Case No. 3:23-cv-00402 |
| Plaintiff, | **CLASS ACTION** |
| v. | **COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF** |
| TRADER JOE'S COMPANY, | **DEMAND FOR JURY TRIAL** |
| Defendant. | |

Plaintiff Robert L. Waring ("Plaintiff"), individually and on behalf of himself and all others similarly situated, bring this class action against Defendant Trader Joe's Company ("Trader Joe's" or "Defendant") and on the basis of personal knowledge, information and belief, and the investigation of counsel, alleges as follows:

## INTRODUCTION

1.    This is a proposed class action on behalf of a nationwide and California class of consumers seeking redress for Defendant's deceptive practices associated with the advertising, labeling and sale of its "The Dark Chocolates Lover's Chocolate 85% Cacao" and Dark Chocolate 72% Cacao" bars (collectively "Dark Chocolates" or "Products").

2.    On December 15, 2022, Consumer Reports ("CR"), an independent, nonprofit organization dedicated to protecting the rights and interests of consumers issued a report on the presence of heavy metals in dark chocolates.  Specifically, CR tested 28 dark chocolate bars for lead and cadmium finding some contained excessive amounts of cadmium and lead—two heavy metals linked to a host of health problems, such that "eating just an ounce a day would put an adult over a level that public health authorities and CR's experts say may be harmful."[1]

3.    To determine the risk posed by these chocolates CR used California's maximum allowable dose level ("MADL") for lead (0.5 micrograms) and cadmium (4.1mcg). While CR found several dark chocolates to be well below the MADLs, others, including those at issue here, contained excessive amounts of lead and/or cadmium.

4.    Trader Joe's Dark Chocolate 72% Cacao product contained lead at 192% of California's MADL, while its 85% cacao Dark Chocolate Lover's bar contained lead at 127%  and cadmium at 229% of California's MADL.

5.    Dark chocolate is widely recognized as a healthful alternative to standard confections having a relatively low sugar content, significant antioxidant qualities and numerous health benefits. In contrast, lead and cadmium are known carcinogens, exposure to which is cumulative and can lead

---

[1] Loria, K, Lead and Cadmium Could Be in Your Dark Chocolate, Consumer Reports, December 15, 2022, available at https://www.consumerreports.org/health/food-safety/lead-and-cadmium-in-dark-chocolate-a8480295550/ (hereinafter "CR Report")(last visited on January 24, 2023)

to a variety of medical maladies such as cancer, kidney and liver damage and other serious health problems. The presence of these carcinogens in the Products is a material fact to consumers who had no reason to suspect their dark chocolates were laden with toxic heavy metals.

6.     Throughout the applicable class period, Defendant falsely represented the nature of its Dark Chocolates and as a result of this false and misleading labeling, was able to sell these Products to tens of thousands of unsuspecting consumers throughout California and the United States, and to profit thereby.

7.     Plaintiff alleges Defendant's conduct is in breach of warranty, violates California's Business and Professions Code § 17200, *et. seq.,* California's Business & Professions Code § l7500, *et. seq.,* California Civil Code § 1750, *et seq*., and is otherwise grounds for restitution on the basis of quasi-contract/unjust enrichment.

## **JURISDICTION AND VENUE**

8.     Jurisdiction of this Court is proper under 28 U.S.C. § 1332(d)(2). Jurisdiction exists as Plaintiff Waring is a resident of Redwood City California, and Defendant Trader Joe's is a California corporation with its principal place of business in Monrovia, California. The amount in controversy exceeds $5,000,000 for the Plaintiff and members of the Class collectively, exclusive of interest and costs, by virtue of the combined purchase prices paid by Plaintiffs and members of the putative Class, and the profits reaped by Defendant from its transactions with Plaintiffs and the Class, as a direct and proximate result of the wrongful conduct alleged herein, and by virtue of the injunctive and equitable relief sought. In addition, more than two-thirds of the members of the class reside in states other than the state in which Trader Joe's is a citizen and in which this case is filed, and therefore any exceptions to jurisdiction under 28 U.S.C. § 1332(d) do not apply.

9.     Venue is proper within this judicial district pursuant to 28 U.S.C. § 1391 because a substantial portion of the underlying transactions and events complained of occurred and affected persons and entities located in this judicial district, and Defendant has received substantial compensation from such transactions and business activity in this judicial district.

**PARTIES**

10.    Plaintiff Robert Waring is a resident of Redwood City, California.

11.    Mr. Waring regularly purchased and consumed Trader Joe's 85% Cacao Dark Chocolate Lover's bar for at least the past four years. He purchased the Dark Chocolate from Trader Joe's locations in Menlo Park and San Carlos, California.

12.    Mr. Waring does not consume, nor purchase chocolate bars with cacao below 80% and reasonably believes dark chocolate to be a healthy alternative to standard confections. Mr. Waring would avoid consuming foods containing known carcinogens such as lead and cadmium

13.    Mr. Waring purchased the Dark Chocolates believing them to be safe, which he otherwise would not have, had he known they contained deleterious carcinogens.

14.    Mr. Waring believed that Defendant lawfully marketed and sold the Products.

15.    Mr. Waring would not have purchased the Products, or would have purchased the Products on different terms had he known the truth.

16.    Mr. Waring was injured in fact and lost money as a result of Defendant's improper conduct.

17.    If Mr. Waring were to be sure that the lead and cadmium were removed from the Products or reduced to safe levels, he would be willing to purchase Trader Joe's Dark Chocolates in the future.

18.    Defendant Trader Joe's Company is a grocery store chain, incorporated and headquartered in Monrovia, California with over 569 stores across the United States. Trader Joe's sells numerous items under its own private label, including the Dark Chocolates at issue in this litigation.

**FACTS**

**A.    Lead & Cadmium Are Known Harmful Carcinogens**

19.    Lead and Cadmium are recognized human carcinogens that are known to cause cancer, reproductive harm, and a host of other medical maladies.

CLASS ACTION COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF

20.    "There is no level of exposure to lead that is known to be without harmful effects."[2] Indeed, lead affects almost every organ and system in the body and accumulates over time, leading to severe health risks and toxicity, including inhibiting neurological function, anemia, kidney damage, seizures, and in extreme cases, coma and death.[3] In pregnant women, exposure to high levels of lead may cause a miscarriage. In men, it can cause damage to reproductive organs. Lead has been widely recognized as the single most significant environmental health threat to children.[4]

21.    The source of lead contamination in cocoa beans occurs during post-harvest handling of wet cocoa beans, not through uptake by the cocoa tree. During the post-harvest handling of wet cocoa beans, beans contact soil through direct contact with the ground or exposed surfaces (roadsides, concrete patio, drying tables, plastic tarps, plastic bags, containers). Wet cocoa beans also contact soil through the deposition of airborne soil (dust) during outdoor drying. The source of post-harvest lead in cocoa beans is therefore the result of poor manufacturing practices – an entirely avoidable phenomenon.

22.    Similar to lead, cadmium builds up in the body over time and even at low dosages can result in damage to the liver, kidney and heart and in severe cases may cause death."[5] As with lead, children are even more susceptible to the effects of exposure to low doses of cadmium over time and can result in an array of developmental and neurobehavioral problems.[6]

---

[2] *Lead* Poisoning, World Health Organization, August 2022, available at https://www.who.int/news-room/fact-sheets/detail/lead-poisoning-and-health#:~:text=Once%20lead%20enters%20the%20body,pregnancy%2C%20thus%20exposing%20the%20fetus. (last visited on January 24, 2022)

[3] Agency for Toxic Substances and Disease Registry, ToxFaq for Lead, available at https://wwwn.cdc.gov/TSP/ToxFAQs/ToxFAQsDetails.aspx?faqid=93&toxid=22

[4] National Research Council, Measuring Lead Exposure in Infants, Children, and Other Sensitive Populations. Washington, D.C.: National Academy Press, 1993, p. 1. Centers for Disease Control, Preventing Lead Poisoning In Young Children, October 1991.

[5] Victoria State Government, Department of Health, available at https://www.betterhealth.vic.gov.au/health/healthyliving/cadmium

[6] Agency for Toxic Substances and Disease Registry, Cadmium ToxFaqs, available at https://wwwn.cdc.gov/TSP/ToxFAQs/ToxFAQsDetails.aspx?faqid=47&toxid=15

23.     Food is the primary source of cadmium exposure among the general population as a consequence of the bio-concentration of cadmium from soil.[7] Cadmium enters the environments through natural and various anthropogenic sources, however, the accumulation of cadmium in the soil–plant environment mainly through anthropogenic activities such as application of phosphate fertilizers, waste water, sewage sludge and manures. *Id.* Soil is the principal source of cadmium in cocoa beans, which occurs through direct uptake of phytoavailable cadmium by the cocoa tree during the pre-harvest stage. The origin of cadmium in these cocoa-growing soils is a mixture of natural and anthropogenic sources and is country and farm-specific. Cadmium levels in such soils are well known. For example, Trader Joe's Dark Chocolate Lover's Chocolate 85% Cacao is sourced from Latin American which is known to have significantly higher cadmium concentrations than cacao grown in other parts of the world.

24.     Responsible manufacturers are aware of cadmium levels in the soils where cocoa is sourced and to ensure the safety of their product could either avoid such regions all together or blend high cadmium content cocoa beans with beans with lower cadmium content to ensure that products do not exceed reasonable safety parameters.

25.     Critically, responsible manufacturers have the ability to limit exposure to cadmium and lead. As Consumer Reports noted, five of the 28 chocolate bars tested were below the MADL for both cadmium and lead, proving that "it's possible for companies to make products with lower amounts of heavy metals—and for consumers to find safer products that they enjoy."[8]

/ / /

/ / /

/ / /

/ / /

/ / /

---

[7]  Chunhabundit R. Cadmium Exposure and Potential Health Risk from Foods in Contaminated Area, Thailand. Toxicol. Res. 2016 Jan;    NIH, National Library of Medicine,, National Center for Biotechnology Information; available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4780235/

[8]  CR Report.

CLASS ACTION COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF

1

**B.    Trader Joe's Chocolates Contain Excessive Amounts of Lead and Cadmium**



26.    It is undisputed that the Trader Joe Products contain excessive amounts of lead and cadmium—a fact that Trader Joe's has known since at least 2014 when it was put on notice of this fact and provided with substantiating analytical tests demonstrating the presence of these carcinogens. Since then, however, Trader Joe's has systematically failed mitigate lead and cadmium levels in its Dark Chocolates and failed to warn consumers that consuming its Products exposes them to unsafe levels of these carcinogens.

27.    The same was confirmed in December 2022, by Consumer Reports which tested 28 different dark chocolate bars for lead and cadmium. The results revealed that Trader Joe's Dark Chocolate Lover's Bar 85% cacao was 27% and 129% in excess of MALDs established for lead and cadmium, respectively, and Trader Joe's 72% Cacao Dark Chocolate was 92% in excess of the MALD established for lead.

CLASS ACTION COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF

28.    Based on its findings, CR launched a consumer petition to send the following message to Trader Joe's and other dark chocolate manufacturers whose products contained dangerous levels of lead and cadmium. To date, the petition has been reportedly signed by nearly 55,000 concerned consumers.

> Consumer Reports' testing has found concerning levels of both lead and cadmium in some of your dark chocolate bars – putting our families' health at risk. Consistent exposure to these heavy metals can lead to a variety of health issues including impacts to brain development, kidney damage, reproductive issues and nervous system problems. We call on your company to commit to reducing levels of lead and cadmium in your dark chocolate, and to publicly communicate progress so we know your company is taking action. We want to enjoy your dark chocolate without dangerous heavy metals! [9]

## C.    Reasonable Consumers Do Not Expect Lead And Cadmium In Their Dark Chocolate

29.    In 2021 the market for dark chocolate was valued at $56 billion and is projected to reach $114 billion by 2030. [10]

30.    The popularity of dark chocolate has been on the rise in recent years, due to its health benefits which include being densely packed with antioxidants, which can help protect against heart disease and stroke, and flavonoids, which have been shown to lower blood pressure and improve blood flow to the brain. [11] Cocoa beans are one of the best-known sources of dietary polyphenols, containing more phenolic antioxidants than most foods inducing positive effects on blood pressure, insulin resistance, and vascular function. [12]

---

[9] https://action.consumerreports.org/20221215_heavymetalschocolate_em. Last visited January 24, 2023

[10] Verified Market Research, available at https://www.verifiedmarketresearch.com/product/global-dark-chocolate-market/ (last visited January 24, 2022).

[11] *Dark Chocolate,* Harvard School of Public Health, available at https://www.hsph.harvard.edu/nutritionsource/food-features/dark-chocolate/ (last visited January 24, 2023); https://nunuchocolates.com/the-dark-chocolate-industry-growing-popularity-and-projected-sales/#:~:text=The%20chocolate%20industry,billion%20by%202022

[12] Samanta S, Sarkar T, Chakraborty R, Rebezov M, Shariati MA, Thiruvengadam M, Rengasamy KRR. Dark chocolate: An overview of its biological activity, processing, and fortification approaches. Curr Res Food Sci. 2022 available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC9589144/

31.    In contrast, milk chocolate is much higher in sugar content and devoid of dark chocolates' healthful attributes. Indeed, the growth of dark chocolate sales is driven by its popularity among health-conscious consumers and increasing awareness regarding potential health benefits associated with its consumption. At bottom, the health attributes of dark chocolate and their positive effects on well-being are material to reasonable consumers. By extension, the deleterious effects of consuming known carcinogens such as lead and cadmium are equally material to reasonable consumers.

32.    Food manufacturers such as Trader Joe's hold a position of public trust such that Consumers reasonably believe that they would not sell products that are contaminated with unsafe levels of heavy metals.

33.    Trader Joe's knew or should have known that Plaintiff and the Class members would rely upon the packaging of the Products and intended for them to do so but failed to disclose the presence of lead or cadmium.

34.    Trader Joe's knew that if the presence of toxic heavy metals in its Products were disclosed, Plaintiff and the Class members would be unwilling to purchase the Products or pay less for them. As a result, Defendant intentionally and knowingly concealed this fact from Plaintiff and the Class members.

35.    Moreover, Trader Joe's knew or should have known that consumers would consume the Products regularly thereby leading to continual and cumulative exposure to dangerous carcinogens.

36.    Trader Joe's has been aware since at least 2014, that its Dark Chocolate Products contained excessive amounts of lead and cadmium yet failed to mitigate this issue by, among other things: (a) properly testing and monitoring for the presence and levels of heavy metals in their dark chocolates; (b) sourcing ingredients from farms and regions that are less impacted by environmental pollutants; and/or (c) blending their Products using multiple sources to reduce the levels of heavy metals.

37.    Moreover, such mitigation efforts are reasonable in light of the fact other chocolate manufacturers have been able to produce dark chocolate with significantly less cadmium and lead than Defendant's Products.

38.     As a result of Trader Joe's concealment of the heavy metals in their Products, Plaintiff and the Class members reasonably believed that the Products were free from levels of carcinogens that could negatively affect their health.

39.     Plaintiff and the Class members purchased the Trader Joe's Products in reliance upon Trader Joe's labels that contained omissions.

40.     Plaintiff and the Class members were harmed in the form of the monies they paid for the Products which they would not otherwise have paid had they known the truth about the Products. Since the presence of toxic heavy metals, including lead and cadmium, in the Products renders them unsafe for human consumption, the Products that Plaintiff and the Class members purchased are worthless, or at a minimum are worth less than Plaintiff and the Class paid for them.

## **ECONOMIC INJURY**

41.     Plaintiff purchases and consumes dark chocolate because of nutritive qualities and health benefits.

42.     Plaintiff sought to buy Products that were lawfully labeled, marketed and sold.

43.     Plaintiff saw and relied on Defendant's misleading labeling of its Products.

44.     Plaintiff believed that the Products were lawfully marketed and sold.

45.     Plaintiff would not have purchased dark chocolates known to contain dangerous levels of known carcinogens.

46.     In reliance on the claims made by Defendant regarding the qualities of its Products, Plaintiff paid for a worthless product, or at a minimum, a price premium for a product worth materially less.

47.     Plaintiff lost money and thereby suffered injury as he would not have purchased the Products and/or paid as much for them absent the misrepresentation.

48.     By engaging in the false and deceptive conduct alleged herein Defendant reaped, and continues to reap financial benefits in the form of sales and profits from its Products.

49.     Plaintiff and the Class lost money as a result of Trader Joe's omissions and unfair practices in that they did not receive what they paid for when purchasing the Products.

50. Plaintiff would be willing to purchase Trader Joe's Products in the future if he could be assured that the Products no longer contained lead or cadmium. However, unless Trader Joe's is enjoined in the manner Plaintiff requests, he will not be able to reasonably determine whether the lead and cadmium levels in the Products have been addressed.

## CLASS ACTION ALLEGATIONS

51. Plaintiff brings this action on behalf of himself and on behalf of classes of all others similarly situated consumers defined as follows:

    a. **National**: All persons in the United States who purchased the Products in the United States during the Class Period.

    b. **California:** All persons in California who purchased the Products in California during the Class Period.

    c. **Class Period** is the maximum time allowable as determined by the statute of limitation periods accompanying each cause of action.

52. Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(a), and 23(b)(1), 23(b)(2), 23(b)(3) and 23(c)(4).

53. Excluded from the Classes are: (i) Defendant and its employees, principals, affiliated entities, legal representatives, successors and assigns; and (ii) the judges to whom this action is assigned.

54. Upon information and belief, there are tens of thousands of members of the Class. Therefore, individual joinder of all members of the Class would be impracticable.

55. There is a well-defined community of interest in the questions of law and fact affecting the parties represented in this action.

56. Common questions of law or fact exist as to all members of the Class. These questions predominate over the questions affecting only individual Class members. These common legal or factual questions include but are not limited to:

    a. Whether Defendant marketed, packaged, or sold the Products to Plaintiff and those similarly situated with material misrepresentations and/or omissions;

    b. Whether Defendant omitted or misrepresented material facts in connection with the sales of its Products;

c.      Whether Defendant participated in and pursued the common course of conduct complained of herein;

d.      Whether Defendant has been unjustly enriched as a result of its unlawful business practices;

e.      Whether Defendant's actions violate the Unfair Competition Law, Cal. Bus. & Prof. Code §§17200, *et seq*. (the "UCL");

f.      Whether Defendant's actions violate the False Advertising Law, Cal. Bus. & Prof. Code §§17500, *et seq*. (the "FAL");

g.      Whether Defendant's actions violate the Consumers Legal Remedies Act, Cal. Civ. Code §§1750, *et seq*. (the "CLRA");

h.      Whether Defendant should be enjoined from continuing the above-described practices;

i.      Whether Plaintiffs and members of the Class are entitled to declaratory relief; and

j.      Whether Defendant should be required to make restitution, disgorge profits, reimburse losses, and pay damages as a result of the above-described practices.

57.     Plaintiff's claims are typical of the claims of the Class, in that Plaintiff is  a consumer who purchased Defendant's Products. Plaintiff is no different in any relevant respect from any other Class member who purchased the Products, and the relief sought is common to the Class.

58.     Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the members of the Class he seeks to represent, and he has retained counsel competent and experienced in conducting complex class action litigation. Plaintiff and his counsel will adequately protect the interests of the Class.

59.     A class action is superior to other available means for the fair and efficient adjudication of this dispute. The damages suffered by each individual Class member likely will be relatively small, especially given the relatively small cost of the Products at issue and the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's conduct. Thus, it would be virtually impossible for members of the Class individually to effectively redress the wrongs done

1    to them. Moreover, even if members of the Class could afford individual actions, it would still not be

2    preferable to class-wide litigation. Individualized actions present the potential for inconsistent or

3    contradictory judgments. By contrast, a class action presents far fewer management difficulties and

4    provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a

5    single court.

6          60.    In the alternative, the Class may be certified because Defendant has acted or refused to

7    act on grounds generally applicable to the Class, thereby making appropriate preliminary and final

8    equitable relief with respect to each Class.

9          61.    The requirements for maintaining a class action pursuant to Rule 23(b)(2) are also met,

10    as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making

11    appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a

12    whole.

13    **CLAIMS FOR RELIEF**

14    **FIRST CAUSE OF ACTION**
**(Breach of Implied Warranty**

15    **Cal. Com. Code §2314; Song-Beverly Act, Cal. Civ. Code §§ 1790, *et seq.*)**

16          62.    Plaintiff incorporates each and every allegation contained in the paragraphs above as if

17    restated herein.

18          63.    The Products are a consumer goods within the meaning of Cal. Civ. Code § 1791(a).

19          64.    Plaintiff and the Class Members who purchased one or more of the Trader Joe's

20    Products are retail buyers within the meaning of Cal. Civ. Code § 1791.

21          65.    Trader Joe's is the manufacturer and seller with respect to the Products of this kind

22    which were sold to Plaintiff and the Class, and contained implied warranties.

23          66.    Trader Joe's impliedly warranted to consumers that the Products were merchantable

24    such that they: (a) would pass without objection in the trade or industry under the contract description,

25    and (b) were fit for the ordinary purposes for which the Products are used.

26          67.    Trader Joe's breached this implied warranty because the Products were unsafe in that

27    they contained lead and cadmium, known carcinogens. As such, the Products would not pass without

28

objection in the trade or industry and were not fit for the ordinary purpose for which they are used (i.e. consumption by consumers).

68.     Trader Joe's was on notice of this breach as it was made aware of the levels of lead and cadmium in its Products as early as 2014.

69.     As a direct and proximate cause of Defendant's breach of the implied warranty, Plaintiff and the Class members have been injured and harmed because they would not have purchased the Products or would have paid less for them had they known they were laden with lead and cadmium.

70.     Plaintiff seeks actual damages, including, without limitation, expectation damages.

## SECOND CAUSE OF ACTION
### ("Unlawful" Business Practices in Violation of
### The Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200, *et seq.*)

71.     Plaintiff incorporates each and every allegation contained in the paragraphs above as if restated herein.

72.     The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. Prof. Code §17200.

73.     A business act or practice is "unlawful" if it violates any established state or federal law.

74.     Defendant's acts, omissions, misrepresentations, practices, and/or non-disclosures concerning the Products alleged herein, constitute "unlawful" business acts and practices in that they violate:

    a.     the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301, *et seq.* and its implementing regulations, including, at least, the following sections:

        i.     21 U.S.C. §343(a), which deems food misbranded when its labeling contains a statement that is false or misleading in any particular;

        ii.    21 C.F.R. §102.5(a)-(d), which prohibits the naming of foods so as to create an erroneous impression about the presence or absence of ingredient(s) or component(s) therein;

iii.    21 U.S.C. §§ 331 and 333, which prohibits the introduction of misbranded foods into interstate commerce.

b.    California's Sherman Food, Drug, and Cosmetic Law ("Sherman Law"), Cal. Health & Safety Code §§ 109875, *et seq*., broadly prohibits the misbranding of food. Cal. Health & Safety Code § 110765; s*ee also* Cal. Health & Safety Code § 110660 ("Any food is misbranded if its labeling is false or misleading in any particular."). The Sherman Law incorporates all food labeling regulations and any amendments to those regulations adopted pursuant to the Food, Drug, and Cosmetic Act of 1938  as the food labeling regulations of California. Cal. Health & Safety Code §§ 110100(a), 110665, 110670.

c.    The False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq*.;

d.    The Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq*.;

e.    Commercial Code, Cal. Com. Code § 2314;

f.    The Song-Beverly Act, Cal. Civ. Code, §§ 1790, *et seq*.;

75.    By committing the unlawful acts and practices alleged above, Defendant has engaged, and continues to be engaged, in unlawful business practices within the meaning of California Business and Professions Code §§ 17200, *et seq.*

76.    Through its unlawful acts and practices, Defendant has obtained, and continues to unfairly obtain, money from members of the Class. As such, Plaintiff requests that this Court cause Defendant to restore this money to Plaintiff and all members of the Class, to disgorge the profits Defendant made on these transactions, and to enjoin Defendant from continuing to violate the Unfair Competition Law or violating it in the same fashion in the future. Otherwise, the Class may be irreparably harmed and denied an effective and complete remedy if such an order is not granted.

**THIRD CAUSE OF ACTION**
**("Unfair" Business Practices in Violation of**
**The Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200, *et seq*.)**

77.    Plaintiff incorporates each and every allegation contained in the paragraphs above as if restated herein.

CLASS ACTION COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF

78.    The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. Prof. Code § 17200.

79.    A business act or practice is "unfair" under the Unfair Competition Law if the reasons, justifications and motives of the alleged wrongdoer are outweighed by the gravity of the harm to the alleged victims.

80.    Defendant has violated, and continues to violate, the "unfair" prong of the UCL through its material omissions and misleading description of the Products. The gravity of the harm to members of the Class resulting from such unfair acts and practices outweighs any conceivable reasons, justifications, or motives of Defendant for engaging in such deceptive acts and practices. By committing the acts and practices alleged above, Defendant had engaged, and continued to engage, in unfair business practices within the meaning of California Business and Professions Code §§17200, *et seq.*

81.    Through its unfair acts and practices, Defendant obtained, and continued to unfairly obtain, money from members of the Class. As such, Plaintiff has been injured and requests that this Court cause Defendant to restore this money to Plaintiff and the members of the Class, to disgorge the profits Defendant had made on its Products, and to enjoin Defendant from continuing to violate the Unfair Competition Law or violating it in the same fashion in the future. Otherwise, the Class may be irreparably harmed and denied an effective and complete remedy if such an Order is not granted.

82.    Trader Joe's conduct caused and continues to cause substantial injury to Plaintiff and other Class Members. Plaintiff has suffered injury in fact as a result of Trader Joe's unlawful conduct.

83.    Pursuant to Bus. & Prof. Code § 17203, Plaintiff seeks an order enjoining Trader Joe's from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices

**FOURTH CAUSE OF ACTION**
**("Fraudulent" Business Practices in Violation of**
**The Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200, *et seq.*)**

84.    Plaintiff incorporates each and every allegation contained in the paragraphs above as if restated herein.

85.     The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Prof. Code § 17200.

86.     A business act or practice is "fraudulent" under the Unfair Competition Law if it actually deceives or is likely to deceive members of the consuming public.

87.     Defendant's omissions regarding the toxic lead and cadmium content of the Products is likely to deceive reasonable consumers and the public.

88.     As a result of the conduct described above, Defendant has been, and will continue to be, unjustly enriched at the expense of Plaintiff and members of the proposed Class. Specifically, Defendant has been unjustly enriched by the profits they have obtained from Plaintiff and the Class from the purchases of their Products.

89.     Through its fraudulent acts and practices, Defendant has improperly obtained, and continues to improperly obtain, money from members of the Class. As such, Plaintiff requests that this Court cause Defendant to restore this money to Plaintiff and the Class, to disgorge the profits Defendant has made, and to enjoin Defendant from continuing to violate the Unfair Competition Law or violating it in the same fashion in the future. Otherwise, the Class may be irreparably harmed and denied an effective and complete remedy if such an Order is not granted.

**FIFTH CAUSE OF ACTION**
**(False Advertising in Violation of**
**California Business & Professions Code §§ 17500, *et seq*.)**

90.     Plaintiff incorporates each and every allegation contained in the paragraphs above as if restated herein.

91.     Defendant uses advertising and packaging to sell its Products. Defendant disseminates advertising regarding its Products which by its very nature is deceptive, untrue, or misleading within the meaning of California Business & Professions Code §§ 17500, *et seq.* because those advertising statements omitted the presence of known carcinogens in the Products—an omission likely to deceive, and continues to deceive, members of the putative Class and the general public.

92.     Defendant knew or should have known that the omissions were untrue or misleading, and acted in violation of California Business & Professions Code §§ 17500, *et seq.*

93.     The misrepresentations and non-disclosures by Defendant of the material facts detailed above constitute false and misleading advertising and therefore constitute a violation of California Business & Professions Code §§ 17500, *et seq*.

94.     Through its deceptive acts and practices, Defendant has improperly and illegally obtained money from Plaintiff and the members of the Class. As such, Plaintiff requests that this Court cause Defendant to restore this money to Plaintiff and the members of the Class, and to enjoin Defendant from continuing to violate California Business & Professions Code §§ 17500, *et seq.*, as discussed above. Otherwise, Plaintiff and those similarly situated will continue to be harmed by Defendant's false and/or misleading advertising.

95.     Pursuant to California Business & Professions Code § 17535, Plaintiff seeks an Order of this Court ordering Defendant to fully disclose the true nature of its misrepresentations. Plaintiff additionally requests an Order: (1) requiring Defendant to disgorge its ill-gotten gains, (2) award full restitution of all monies wrongfully acquired by Defendant and (3), interest and attorneys' fees. Plaintiff and the Class may be irreparably harmed and denied an effective and complete remedy if such an Order is not granted.

96.     Injunctive relief is also appropriate, and indeed necessary, to require Trader Joe's to provide full and accurate disclosures regarding the Products so that Plaintiff and Class members can reasonably rely on the Products' packaging.

### SIXTH CAUSE OF ACTION
**(Violation of the Consumers Legal Remedies Act,
California Civil Code §§ 1750, *et seq*.)**

97.     Plaintiff incorporates each and every allegation contained in the paragraphs above as if restated herein.

98.     This cause of action is brought pursuant to the Consumers Legal Remedies Act, California Civil Code §§ 1750, *et seq*. (the "CLRA").

99.     Plaintiff and each member of the proposed Class are "consumers" within the meaning of Civil Code § 1761(d).

100.    The purchases of the Products by consumers constitute "transactions" within the meaning of Civil Code §1761(e) and the Products constitute "goods" within the meaning of Civil Code § 1761(a).

101.    Defendant has violated, and continues to violate, the CLRA in at least the following respects:

    a.    § 1770(5) pertaining to misrepresentations regarding the characteristics of goods sold—specifying that misleading representations regarding ingredients violate the CLRA;

    b.    § 1770(7) pertaining to misrepresentations regarding the standard, quality, or grade of goods sold; and

    c.    § 1770(9) pertaining to goods advertised with the intent not to provide what is advertised.

102.    Defendant knew, or should have known, that the labeling of their Products violated consumer protection laws, and that these statements would be relied upon by Plaintiff and the members of the Class.

103.    The representations were made to Plaintiff and all members of the Class. Plaintiff relied on the accuracy of the representations on Defendant's labels which formed a material basis for his decision to purchase the Products. Moreover, based on the very materiality of Defendant's misrepresentations uniformly made on or omitted from their Product labels, reliance may be presumed or inferred for all members of the Class.

104.    Defendant carried out the scheme set forth in this Complaint willfully, wantonly, and with reckless disregard for the interests of Plaintiff and the Class, and as a result, Plaintiff and the Class have suffered an ascertainable loss of money or property.

105.    Plaintiff and the members of the Class request that this Court enjoin Defendant from continuing to engage in the unlawful and deceptive methods, acts and practices alleged above, pursuant to California Civil Code § 1780(a)(2). Unless Defendant is permanently enjoined from continuing to engage in such violations of the CLRA, future consumers of Defendant's Products will be damaged by their acts and practices in the same way as have Plaintiff and the members of the proposed Class.

106.    Plaintiff served a CLRA demand pursuant to Civil Code § 1782, in conjunction with this Complaint. If Trader Joe's fails to provide the requested relief within the next 30 days, Plaintiff will amend this complaint to seek damages as provided under Civil Code § 1780.

**SEVENTH CAUSE OF ACTION**
**(Restitution Based On Quasi-Contract/Unjust Enrichment)**
**By Plaintiffs on Behalf of the Nationwide Class**

107.    Plaintiffs incorporate each and every allegation contained in the paragraphs above as if restated herein.

108.    Defendant's conduct in enticing Plaintiffs and the Class to purchase is Products with false and misleading packaging is unlawful because the statements contained on the Defendant's Product labels are untrue.

109.    Defendant took monies from Plaintiffs and the Class for these Products and have been unjustly enriched at the expense of Plaintiffs and the Class as result of their unlawful conduct alleged herein, thereby creating a quasi-contractual obligation on Defendant to restore these ill-gotten gains to Plaintiffs and the Class.

110.    It is against equity and good conscience to permit Defendant to retain the ill-gotten benefits received from Plaintiffs and Class members.

111.    As a direct and proximate result of Defendant's unjust enrichment, Plaintiffs and the Class are entitled to restitution or restitutionary disgorgement in an amount to be proved at trial.

**PRAYER FOR RELIEF**

THEREFORE, Plaintiff, on behalf of himself and on behalf of the other members of the Class and for the Counts so applicable on behalf of the general public request an award and relief as follows:

A.    An order certifying that this action is properly brought and may be maintained as a class action, that Plaintiff be appointed Class Representative, and Plaintiff's counsel be appointed Lead Counsel for the Class.

B.    Restitution in such amount that Plaintiff and all members of the Class paid to purchase Defendant's Product or restitutionary disgorgement of the profits Defendant obtained from those transactions, for Causes of Action for which they are available.

C.    Compensatory damages for Causes of Action for which they are available.

1    D.    Other statutory penalties for Causes of Action for which they are available.

2    E.    Punitive Damages for Causes of Action for which they are available.

3    F.    A declaration and Order enjoining Defendant from marketing and labeling its Product

4  deceptively, in violation of laws and regulations as specified in this Complaint.

5    G.    An Order awarding Plaintiff their costs of suit, including reasonable attorneys' fees and

6  pre and post judgment interest.

7    H.    An Order requiring an accounting for, and imposition of, a constructive trust upon all

8  monies received by Defendant as a result of the unfair, misleading, fraudulent and unlawful conduct

9  alleged herein.

10    I.    Such other and further relief as may be deemed necessary or appropriate.

11                          **<u>DEMAND FOR JURY TRIAL</u>**

12    Plaintiff hereby demands a trial by jury on all causes of action or issues so triable.

13                                      Respectfully submitted,

14  DATED:  January 27, 2023              **KUZYK LAW, LLP**

15                                      By:  /s/ *Michael D. Braun*
                                             Michael D. Braun
16
17                                      Michael D. Braun (SBN 167416)
                                        *mdb@kuzykclassactions.com*
18                                      1999 Avenue of the Stars, Ste. 1100
                                        Los Angeles, California 90067
19                                      Telephone:    (213) 401-4100
                                        Facsimile:    (213) 401-0311

20  DATED:  January 27, 2023              **KAPLAN FOX & KILSHEIMER LLP**

21                                      By:  /s/ *Laurence D.* King
                                             Laurence D. King
22
23                                      Laurence D. King (SBN 206423)
                                        *lking@kaplanfox.com*
24                                      Matthew B. George (SBN 239322)
                                        *mgeorge@kaplanfox.com*
25                                      Blair E. Reed (SBN 316791)
                                        *breed@kaplanfox.com*
26                                      1999 Harrison Street, Suite 1560
                                        Oakland, CA 94612
27                                      Telephone:    (415) 772-4700
                                        Facsimile:    (415) 772-4707

28

CLASS ACTION COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**KAPLAN FOX & KILSHEIMER LLP**
Joel B. Strauss (to be admitted *pro hac vice*)
*jstrauss@kaplanfox.com*
850 Third Avenue
New York, NY  10022
Telephone:      (212) 687-1980
Facsimile:      (212) 687-7714

*Counsel for Plaintiff and the Proposed Class*